IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | *   CRIMINAL ACTION: 16-00115-KD-N |
| v. | * |
| | * |
| STEPHEN COREY PEARCE and | * |
| SAMANTHA CHELSEA LYONS | * |
|     Defendants. | * |

**ORDER**

This matter is before the Court on the Defendant Stephen Corey Pearce's Motion to Suppress and Dismiss the charges against him (Doc. 24) and Co-Defendant Samantha Chelsea Lyons Joinder thereof (Doc. 25). The Court held a hearing on July 18, 2016. Upon consideration, the Court finds that the motions are due to be **DENIED.**

**I.     Findings of Fact**[1]

In the early morning hours of July 20, 2015, Samantha Lyons and Stephen Pearce were traveling by car through Louisiana on their way to Daphne, AL. Lyons was driver and owner of the car. Pearce was the passenger. Louisiana Trooper Ryan Zimmerman observed the car crossing over the white line on two occasions. Trooper Zimmerman stopped the car on Interstate 12. The stop was recorded. (Court Exh. 1). Trooper Zimmerman approached the passenger side of the car and requested Lyon's drivers license and asked her to get out of the car so that he could explain why he had stopped them. Lyons complied and when she approached the back of the car, Trooper Zimmerman explained why he had stopped the car and asked her if she had been drinking. Lyons responded that she had not been drinking. Trooper Zimmerman immediately started to question her about where she had been, how long and the purpose of her trip. Trooper

---

[1] The Court finds Trooper Zimmerman's testimony at the hearing to be credible.

Zimmerman stood close to Lyons while she answered to determine whether she smelled of alcohol or marijuana and to see if her speech was slurred. Lyons said they were in Houston visiting for the weekend and had stayed with her relatives. This questioning lasted about 25 seconds. Trooper Zimmerman testified that throughout the questioning Lyons appeared nervous and periodically failed to make eye contact.

Trooper Zimmerman then approached Pearce, who was still in the vehicle, and asked similar questions. Pearce responded that they had visited his relatives and stayed in a hotel while in Houston. Trooper Zimmerman noted the discrepancies and asked for an ID. Pearce said he didn't have any ID. Trooper Zimmerman asked Pearce to look for it. This questioning lasted approximately 1 minutes and 20 seconds. Trooper Zimmerman waited approximately an additional two minutes while Pearce searched for, then produced an ID. The Trooper testified that Pearce appeared very nervous and agitated throughout the questioning.[2] Trooper Zimmerman then took the ID to his patrol car and ran a criminal check. Within a minute it was determined that Pearce had recently been released from jail on drug charges. At approximately 5-6 minutes into the stop, Trooper Zimmerman returned to question Lyons and asks for permission to search the car, which she voluntarily granted. A search of the car resulted in finding cocaine in a gym bag in the trunk.

**II.     Conclusions of Law**

**A.     Standing**

As explained by the 11th Circuit:

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. It is well-established, however, that only individuals who have a legitimate

---

[2] The Court notes that later in the video the Trooper can be heard telling the backup officer that the passenger appeared very nervous during questioning.

expectation of privacy in the area invaded may invoke the protections of the Fourth Amendment. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *see also United States v. McKennon,* 814 F.2d 1539, 1545 (11th Cir.1987) (per curiam) ("Rights secured by the Fourth Amendment are personal and cannot be vicariously asserted.").

We have held that a "passenger[ ] in a private car, ... who has no possessory interest in the automobile, does not have a legitimate expectation of privacy in the interior of the automobile because he does not have the right to exclude others from the car." *United States v. Harris,* 526 F.3d 1334, 1338 (11th Cir.2008) (per curiam) (citing *Rakas v. Illinois,* 439 U.S. 128, 140, 143 n. 12, 148, 99 S.Ct. 421, 429, 430 n. 12, 58 L.Ed.2d 387 (1978)); *see also United States v. Cooper,* 133 F.3d 1394, 1398 (11th Cir.1998) ("A passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents, regardless of whether the driver owns or rents it.")….

United States v. Lee, 586 F.3d 859, 864 (11th Cir. 2009).

In this case, there is no dispute that Lyons, not Pearce, was the driver and owner of the vehicle that was searched. Pearce has not asserted a property or possessory interest in the car, thus he has failed to meet his burden of establishing a legitimate expectation of privacy in the trunk in which the cocaine was discovered. Rakas v. Illinois, 439 U.S. 128, 148-149 (1978) (Passengers occupying a car they neither owned nor leased have no legitimate expectation of privacy in the trunk or the glove compartment of an automobile.) However, the government has waived the issue of standing by failing to raise the issue and, instead, addressing the merits of Pearce's Fourth Amendment claims. United States v. Lightbourn, 357 Fed. Appx. 259, 264 (11th Cir. 2009). Accordingly, the court will address the merits of Pearce's Fourth Amendment claims.

**B.     Reasonableness of duration of stop**

In United States v. Purcell, 236 F.3d 1274 (11th Cir. 2001), the Court discussed the reasonableness of prolonged detentions for traffic violations. The Court held that a "traffic stop may not last 'any longer than necessary to process the traffic violation' unless there is articulable

3

suspicion of other illegal activity." Id. at 1277. However, the Court also held that "only unrelated questions which <u>unreasonably</u> prolong the detention are unlawful: 'detention not questioning, is the evil at which *Terry's* [prohibition] is aimed.'" Id. at 1280 (emphasis added).

First, the court finds that the initial questioning of Lyons, which lasted approximately 25 seconds was not unrelated to the traffic stop.  Lyons was driving in the early morning hours and was observed swerving across the white line.  It was reasonable for the trooper to be concerned that she may be impaired.  25 seconds of questioning to determine whether she was impaired was not unreasonable.

Next, it was reasonable for the Trooper to also determine the identity of the passenger and obtain a criminal check. <u>Purcell,</u> 236 F.3d at 1278 ("The request for criminal histories [of occupants of the car] as part of a routine computer check is justified for officer safety. It is both reasonable and minimally intrusive[]").  The only possible questionable period of detention is when the trooper approached Pearce and questioned him about where he had been and why, before asking for an ID.  However, within 15 seconds it was clear that Pearce was giving a different story from Lyons and was very nervous. Pearce also claimed not to have an id.  The court does not find that 15 seconds of possibly unrelated questioning, before asking for an id, <u>unreasonably</u> prolonged the detention.

The court also finds that based on the inconsistent stories and the fact that both Lyons and Pearce were nervous, further questioning of approximately 1-2 minutes was warranted based on reasonable suspicion that illegal activity may be present. The officer then waited approximately 2 minutes for the passenger to produce an ID.

The Trooper then went to his car to run a check on the ID.  Within a minute he determined that Pearce had recently been released from jail due to a narcotics charge, which was

4

also inconsistent with Pearce's statements and gave further support to his suspicion that illegal activity might be afoot.[3]

Trooper Zimmerman then returned to question Lyons and within 30 seconds she consented to the search of the car. The totality of the stop at this point was approximately 6 minutes, which is the only time period relevant to a determination of whether the duration of the traffic stop was reasonable. Purcell, 236 F.3d at 1279 ("[i]n this case, the district court determined that Shon Purcell consented to a search of his car approximately fourteen minutes into the traffic stop. These initial fourteen minutes, therefore, are the only ones relevant to a determination whether the duration of the traffic stop was reasonable[]").

Upon consideration of the totality of the evidence, the court finds that the duration of the stop was not unreasonable and did not violate the defendants' constitutional right to be free of unreasonable seizure. Specifically, a 6 minute seizure, when there is an initial suspicion of driver impairment and within 2 minutes the driver and passenger are telling inconsistent stories, is simply not an unreasonable length of time for further inquiry.

**DONE** and **ORDERED** this **19th** day of **July 2016.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Trooper was unsure whether Pearce was convicted of the drug charge.